IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARMON BRYANT,<br><br>PLAINTIFF,<br><br>v.<br><br>COMMUNITY COLLEGE OF PHILADELPHIA,<br><br>DEFENDANT. | Civil Action No. _____<br><br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT AND JURY DEMAND**

Plaintiff Sharmon Bryant, by and through her attorneys, Bell & Bell LLP, hereby files the following Complaint and Jury Demand ("Complaint").

**PRELIMINARY STATEMENT**

1. This is an action for an award of damages and other relief on behalf of Plaintiff Sharmon Bryant (hereinafter "Plaintiff" or "Ms. Bryant"), a former employee of Community College of Philadelphia, (hereinafter "CCP" or "Defendant"). Despite her loyalty and consistent performance, Ms. Bryant was subjected to discrimination and harassment on the basis of her age, culminating in her wrongful termination on September 11, 2024.

2. This action arises under the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. ("ADEA"), 42 U.S.C. § 2000(e), et. seq., the Philadelphia Fair Practices Ordinance ("PFPO"), the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq. ("PHRA"), and the common law of the Commonwealth of Pennsylvania.

## JURISDICTIONAL STATEMENT

3. This Court has original jurisdiction over all civil actions arising under the Constitution, laws or treaties of the United States pursuant to 29 U.S.C. §§ 1331 and 1391.

4. The jurisdiction of this Court is also invoked pursuant to 28 U.S.C. § 1343(4), which grants the District Court original jurisdiction in any civil action authorized by law to be commenced by any person to recover damages to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

5. This Court has supplemental jurisdiction over any Pennsylvania state law claims pursuant to 28 U.S.C. § 1367.

6. All conditions precedent to the institution of this suit have been fulfilled. On February 25, 2025, Plaintiff timely filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission ("PHRC"), which was dual-filed as a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC").[1] On December 12, 2025, the EEOC issued a Notice of Right to Sue to Plaintiff. This action has been filed within ninety (90) days of Plaintiff's receipt of said Notice. With respect to the PHRA claims alleged herein, it has been more than one year since Ms. Bryant filed her Charge as a Complaint with the PHRC.

## VENUE

7. This action properly lies in the Eastern District of Pennsylvania, pursuant to 28 U.S.C. § 1391(b).

---

[1] Ms. Bryant initially submitted a completed Questionnaire to the PHRC in October 2024, but submitted her formal Complaint on February 25, 2025.

8. This action properly lies in the Eastern District of Pennsylvania because significant activities associated with the claims alleged took place in this jurisdiction and because Plaintiff was employed and terminated by Defendant in this jurisdiction.

## PARTIES

9. Plaintiff Sharmon Bryant is an adult female citizen and resident of Philadelphia, Pennsylvania and the United States of America.

10. Ms. Bryant is sixty-six (66) years old and within the class of individuals protected against discrimination by the ADEA.

11. At the time of her termination, Ms. Bryant was sixty-four (64) years old.

12. Defendant Community College of Philadelphia ("CCP") is an educational institution located at 1700 Spring Garden Street, Philadelphia, Pennsylvania 19130.

13. At all relevant times, Defendant is and has been an employer employing more than 50 employees.

14. At all relevant times, employees of Defendant acted as agents and servants for Defendant.

15. At all relevant times, employees of Defendant were acting within the scope of their authority and in the course of their employment under the direct control of Defendant.

16. At all times material hereto, Defendant acted by and through its authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

17. At all relevant times hereto, Plaintiff was an "employee" of Defendant within the meanings of the laws at issue in this suit and is accordingly entitled to the protection of said laws.

18. At all relevant times hereto, Defendant was an "employer" and/or "person" under the laws at issue in this matter and is accordingly subject to the provisions of said laws.

19. This Honorable Court has personal jurisdiction over the Defendant.

## FACTS

20. On or about March 5, 2021, Ms. Bryant was hired by CCP in the position of Associate Director, Title III Grant.

21. While employed by CCP, Ms. Bryant performed her duties in an excellent and hardworking manner.

22. Despite her loyalty and consistent performance, Ms. Bryant was discriminated against and harassed on the basis of her age, culminating in her wrongful termination on September 11, 2024.

23. Ms. Bryant was supervised by Associate Vice President Dr. Jennifer Roberts from the start of her employment until February 2023.

24. Ms. Bryant had no issues with Dr. Roberts, and received favorable feedback from her.

25. Ms. Bryant was then supervised by Associate Vice President Dr. Vance Gray from February 2023 until July 2024.

26. In July 2024, when Dr. Gray left CCP, Interim Provost and Vice President Dr. Linda Powell became Ms. Bryant's supervisor.

27. After Dr. Powell became her supervisor, Ms. Bryant repeatedly requested to meet with Dr. Powell to discuss the budget, as she had routinely done with previous supervisors.

28. Dr. Powell refused to meet with Ms. Bryant.

29. Monitoring the Title III budget was part of Ms. Bryant's job duties.

30. Regular communication between an Associate Director and Project Director is essential to the successful implementation of a grant.

31. Yet Dr. Powell repeatedly refused to meet with Ms. Bryant to discuss the budget or budget requirements.

32. Dr. Powell did meet with other Title III staff, who were significantly younger than Ms. Bryant and who were supervised by Ms. Bryant, in one-on-one meetings.

33. Previous supervisors would not meet with Ms. Bryant's junior staff without Ms. Bryant's knowledge.

34. Dr. Powell, however, met with the junior staff members secretly, without informing Ms. Bryant, and avoided meeting with Ms. Bryant.

35. Dr. Powell's job description as Project Director did not include direct interactions with junior staff members and her actions, including purposely and intentionally undermining Ms. Bryant's authority, impeded Ms. Bryant's ability to effectively do her job

36. Ms. Bryant established relationships with senior administrators in the Grants and Budget offices to facilitate proper administration of the grant.

37. Dr. Powell, who had never administered the grant, displayed displeasure with Ms. Bryant facilitation of proper administration of the grant through her relationships with the senior administrators in the Grants and Budget offices, and discouraged and reprimanded Ms. Bryant with respect to her interactions with senior administrators.

38. Ms. Bryant brought her grandchild to work on one occasion when Dr. Powell was her supervisor.

39. When Ms. Bryant informed Dr. Powell that her grandchild would be with her, Dr. Powell verbally reprimanded Ms. Bryant and sent Ms. Bryant, via email, a Human Resources memo about CCP's policy concerning children on campus.

40. In the past, when Ms. Bryant had brought her grandchild to work, previous supervisors had welcomed her grandchild's presence.

41. Dr. Powell did not verbally reprimand, or send the HR memo to, younger employees who brought their children to work.

42. On September 11, 2024, Ms. Bryant was terminated from CCP.

43. She was informed that her contract was not being renewed due to budget constraints.

44. All of the younger employees who Ms. Bryant supervised had their contracts renewed.

45. The younger employees remain employed with CCP upon information and belief.

46. At the time of Ms. Bryant's termination, Dr. Powell and the Director of Human Resources, Abbey Amentro, ordered Ms. Bryant to turn over her keys and work identification, and immediately leave the campus with a security escort.

47. The Head of Security escorted Ms. Bryant from the Human Resources Office, located at Broad and Spring Garden Street, to her office three (3) blocks away.

48. This was done in broad daylight, in full view of Ms. Bryant's colleagues, staff, and students.

49. The Head of Security stood guard as Ms. Bryant packed up her belongings in the office she had occupied for four (4) years.

50. She was given less than two (2) hours to gather her belongings and leave campus.

51. Again, all of this was done in front of Ms. Bryant's colleagues, staff she supervised, and students.

52. Ms. Bryant had not driven to campus that day, and had no means to transport her belongings home.

53. CCP's reason for not renewing Ms. Bryant's contract was allegedly budget restraints; yet the Department of Education awards CCP funds for the Title III Budget that were sufficient to cover all personnel salary, including Ms. Bryant's salary of $80,000.

54. In an email dated June 27, 2024, Dr. Gray had confirmed that all Title III contracts would be renewed for the 5th year of the grant.

55. Dr. Gray informed the recipients that new contracts would be issued during the intervening weeks.

56. Ms. Bryant was the first recipient in that email correspondence.

57. Ms. Bryant's performance evaluations had all been satisfactory, and she had even exceeded expectations in one or more categories.

58. John Fink, an external evaluator reporting to the Department of Education, praised Ms. Bryant for the excellent progress she made with Title III.

59. Ms. Bryant had over ten (10) years' experience successfully administering Title III grants, prior to her employment with CCP.

60. The grounds for Ms. Bryant's termination are entirely unjustified and unwarranted.

61. CCP claimed to have terminated Ms. Bryant because she had overspent the Title III budget going into Year 5 of the Title III Grant.

62. Ms. Bryant, however, was not authorized to approve budget expenditures.

63. Only her supervisor – at the time Dr. Gray – had the authority to approve grant-related budget expenditures.

64. It was therefore impossible for Ms. Bryant to overspend the Title III Budget.

65. Don Crews, the Program Liaison for the Department of Education, documented that the grant was underspent during Ms. Bryant's tenure.

66. Notwithstanding the foregoing, CCP exploited the budget shortfall to terminate Ms. Bryant on the basis of her age as part of its mission to push out older employees.

67. At the time of her termination, several employment opportunities were available at CCP that Ms. Bryant was eligible and qualified for, that she could have been considered for had she not been terminated in the manner described herein, and that she would have accepted had the circumstances of her termination not allowed for her to be provided these opportunities.

68. In light of the circumstances outlined above, and given her treatment during her employment with CCP and the circumstances surrounding her termination, Ms. Bryant maintains that she was discriminated against and harassed on the basis of her age, and that her termination was a result of age discrimination.

69. Based on the foregoing, Ms. Bryant was subjected to discrimination and harassment on the basis of her age in violation of the ADEA, the PFPO, and the PHRA.

70. Ms. Bryant has suffered mental anguish and severe emotional distress as a direct and proximate result of the actions and inactions of Defendant.

71. Defendant and its agents acted with the intent of causing or with reckless disregard for the probability that their actions would cause Ms. Bryant severe emotional distress.

72. Defendant willfully violated the ADEA, the PFPO, and the PHRA, as Defendant knew that its actions violated the statutes and/or acted with reckless disregard as to whether its actions violated the ADEA, the PFPO, and the PHRA.

73. Ms. Bryant has suffered financial losses, which include, among other things, lost wages, and an obligation for attorneys' fees and costs of bringing suit, as a direct and proximate result of the actions and inactions of Defendant.

## COUNT I
### Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq.

74. Plaintiff Sharmon Bryant repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

75. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the ADEA.

76. Plaintiff is, and was at the time of her termination, over forty years of age, and was an individual within the class protected by the Age Discrimination in Employment Act.

77. In discriminating against and harassing Ms. Bryant because of her age, Defendant violated the Age Discrimination in Employment Act.

78. Defendant's violations were intentional and willful.

79. Defendant's willful violations of the ADEA warrant an award of liquidated damages.

80. As the direct and proximate result of Defendant's violation of the Age Discrimination in Employment Act, Plaintiff Sharmon Bryant has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT II
### Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

81. Plaintiff Sharmon Bryant repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

82. Based on the foregoing, Defendant has engaged in unlawful employment practices in violation of the Pennsylvania Human Relations Act.

83. In discriminating against and harassing Ms. Bryant because of her age, Defendant violated the Pennsylvania Human Relations Act.

84. As the direct and proximate result of Defendant's violation of the Pennsylvania Human Relations Act, Plaintiff Sharmon Bryant has sustained loss of earnings, severe emotional and psychological distress, loss of self-esteem, loss of future earning power, as well as back pay, front pay, and interest due thereon, and has incurred attorneys' fees and costs.

## COUNT III
### PHILADELPHIA FAIR PRACTICES ORDINANCE
### Philadelphia Code §§ 9-1100, et seq.

85. Plaintiff Sharmon Bryant repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

86. Based on the foregoing, Defendant engaged in unlawful employment practices in violation of the Philadelphia Fair Practices Ordinance.

87. In discriminating against and harassing Ms. Bryant because of her age, Defendant violated the PFPO.

88. As the direct and proximate result of the aforesaid unlawful employment practices engaged in by Defendant, Plaintiff Sharmon Bryant has sustained a loss of earnings and earning potential, severe emotional and psychological distress, loss of self-esteem, loss of future earning

power, as well as back pay, front pay and interest due thereon, and has incurred attorneys' fees and costs.

## **PRAYER FOR RELIEF**

89. Plaintiff Sharmon Bryant repeats and incorporates by reference the allegations of all preceding paragraphs as if fully set forth at length herein.

**WHEREFORE**, Plaintiff Sharmon Bryant respectfully requests that this Court enter judgment in his favor and against Defendant CCP, and Order:

a. Appropriate equitable relief, including reinstatement or front pay;

b. Defendant to compensate Plaintiff with a rate of pay and other benefits and emoluments of employment to which she would have been entitled had she not been subjected to unlawful discrimination and harassment;

c. Defendant to pay Plaintiff punitive damages;

d. Defendant to pay Plaintiff liquidated damages;

e. Defendant to pay Plaintiff compensatory damages for future pecuniary losses, pain and suffering, inconvenience, mental anguish, loss of employment and other nonpecuniary losses as allowable;

f. Defendant to pay Plaintiff's costs of bringing this action, including, but not limited to, Plaintiff's attorneys' fees;

g. Plaintiff be granted any and all other remedies available under the ADEA, the PFPO, the PHRA and any other applicable law or common law; and

h. Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff Sharmon Bryant hereby demands trial by jury as to all issues so triable.

                                                      BELL & BELL LLP

By:    */s/ Christopher A. Macey, Jr.*
           Christopher A. Macey, Jr., Esquire
           One Penn Center
           1617 JFK Blvd. – Suite 1254
           Philadelphia, PA 19103
           (215) 569-2285

*Attorneys for Plaintiff Sharmon Bryant*

Dated: March 11, 2026